

FaegreBD.com

J. JOSEPH TANNER
Partner
Joe.tanner@FaegreBD.com
Direct +1 317 237 1251

Faegre Baker Daniels LLP
300 North Meridian Street □ Suite 2700
Indianapolis □ Indiana 46204-1750
Phone +1 317 237 0300
Fax +1 317 237 1000

USA ▾ UK ▾ CHINA

March 17, 2015

**VIA ECF and FEDERAL EXPRESS**

The Honorable Steven C. Mannion
United States Magistrate Judge
U.S. District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building &
U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

Re: *In re: Zimmer Durom Cup Products Liability Litigation*

Dear Judge Mannion:

I write on behalf of Plaintiffs and Defendants in advance of the Status Conference scheduled for March 24, 2015, and pursuant to the Court's Order Scheduling Status Conference of February 25, 2015 [Dkt. 671]. Below is a proposed agenda for the conference, and the parties' respective positions on agenda items 2, 6, and 7.

**AGENDA**

1. Plaintiffs' Motion to Amend Case Management Order No. 3 to Require Contribution by State Court Plaintiffs [Pl. Mtn., Dkt. 652; Dft. Resp., Dkt. 663; Pl. Reply, Dkt. 669; Certain Pls. Opp., Dkt. 662]

2. Certain Plaintiffs' Motions to Reduce Common Benefit Fund Contribution

3. Plaintiffs' Liaison Counsel's Request for Expense Reimbursement

4. Progress of Mediations

5. Individual Plaintiffs' Requests for Case-Specific Discovery

6. Plaintiffs' Request for Common Issue Discovery Related to Metallosis

7. Plaintiffs' Request for Updated "Revision Rate"

The Honorable Steve C. Mannion -2- March 17, 2015

## CERTAIN PLAINTIFFS' MOTIONS TO REDUCE COMMON BENEFIT FUND CONTRIBUTION

**A.   *Individual Plaintiffs' Position***

Several individual plaintiffs have moved to have their common benefit fee reduced from the Court ordered 4% because they were able to settle their cases at mediation and allege that the discovery work-up performed by Liaison counsel did not provide added benefit or value to their claims.

**B.   *Plaintiffs' Co-Liaison Counsel's Position***

Prior to 2012, many cases settled through mediation before significant discovery work-up occurred and in those cases this Court often lowered the common benefit fee. However, since 2012, significant litigation has occurred in the MDL. The Liaison Plaintiffs' Counsel have conducted over forty depositions of Zimmer employees and Zimmer experts. These depositions have occurred all over the United States and in London. They have completed the review of hundreds of thousands of pages of discovery, have designated and worked up three common issue Plaintiffs' expert witnesses, and have prepared eight Plaintiffs' cases for trial. All Plaintiffs have benefited from pushing cases toward trial, and thereby settlement pressure, in settling their cases, it no longer makes financial sense to lower the common benefit fees. Additionally, the Common Benefit Fund currently has less than $400,000 available that has been collected since 2012. This number is not sufficient to cover the outstanding costs of the litigation and does not even begin to cover the attorneys' fees that have accrued. As such Plaintiffs' Co-Liaison Counsel opposes the requests to lower individual common benefit fees.

## PLAINTIFFS' REQUEST FOR COMMON ISSUE DISCOVERY RELATED TO METALOSIS

**A.   *Plaintiffs' Position***

The focus of this litigation started with a relatively simple premise: the back side of the Durom acetabular cup was failing to adhere to the acetabulum of patients in which the cup was implanted. The cups became loose, and needed revision. All of plaintiffs' discovery moved forward on that basis and focused on that single core issue. Subsequently, however, as time has progressed, more and more clients have retained our firms and many plaintiffs firms throughout this country with cases filed in this court where the injury is not only the acetabular cup loosening, but also subsequent metalosis. Metalosis is the process by which metal ions are released from, in this case, a foreign body into the body causing, among other things, muscle tissue death (necrosis) and/or pseudotumors. For many of the more recently-filed cases, the metalosis injuries are becoming more and more prevalent. The reason for this is simple: the longer a loosened acetabular cup remains in the body, creating metal wear between the acetabular cup and femoral ball, the more likelihood of metalosis. Because Zimmer never issued a formal recall of the Zimmer acetabular cup, many persons who had such a loosening were

The Honorable Steve C. Mannion  -3-  March 17, 2015

unaware of the source of their pains and were often told by their treating physicians that the pains are those normally associated with a hip replacement surgery. In reality, the longer persons had a loose acetabular cup in their body, the higher likelihood for metalosis injuries to develop. It stands to reason, then, that it is only now that waves of those injuries are emerging: those persons who, through no fault of their own, were not aware of the source of their pains were a loose cup and now developed metalosis and greater injuries. Critically, because the core litigation issued by plaintiffs are over five years old, the metalosis injury cases were simply not present or at issue. Now they are, and Plaintiffs are owed time to develop discovery on the same for the next wave of trial picks that will focus on this type of injury.

**B.    *Zimmer's Position***

Simply stated, Plaintiffs are not entitled to a do-over on fact and expert discovery that has already been taken and that closed months ago. It is undisputed that this MDL was created to coordinate all pretrial issues related to the design, manufacture, and warnings related to the Durom Cup, regardless of the theories of defect, and that the time to take all common issue fact and expert discovery closed on May 30, 2014, and September 15, 2014, respectively. (*See* Trans. Order, Dkt. 11; Case Management Order Regarding Initial Trial Setting and Pretrial Deadlines at II.A., Dkt. 227). It is further undisputed that Plaintiffs took extensive documentary and deposition fact discovery on a range of issues, including metalosis and other adverse metal reactions (together, "metalosis"),[1] and nothing prevented Plaintiffs from requesting additional discovery on any topic. Moreover, Plaintiffs and Defendants have each disclosed common issue expert opinion specifically related to metalosis. Thus, nearly four years after common issue fact discovery began and ten months after it closed, and six months after common issue expert discovery was completed, Plaintiffs should not now be permitted to reopen discovery on metalosis, particularly when Plaintiffs have given no indication of the kind, scope, or duration of discovery they envision.

On June 9, 2010, the JPML centralized in this Court all federal cases that share factual issues "as to whether Zimmer's Durom Acetabular Component (or Durom Cup) … was defectively designed and/or manufactured, and whether Zimmer failed to provide adequate warnings concerning the device." (Trans. Order at 1, Dkt. 11). Accordingly, there can be no dispute that these cases were centralized for purposes of pretrial proceedings related to the Durom Cup, regardless of the theory or theories of defect, including metalosis.

Common issue fact discovery began in May 2011 and, since that time, Zimmer has answered at least five sets of comprehensive written discovery resulting in the production of more than 1.8 million pages of documents, and the parties have taken twenty-two common issue fact depositions in the U.S. and Europe. Plaintiffs' documentary and deposition discovery covered a

---

[1]  Metalosis is the generic term for a variety of medical conditions that result from the alleged disposition and build-up of metal debris in the soft tissues of the body, typically as a result of metallic orthopedic components abrading against one another.

Case 2:09-cv-04414-SDW-SCM   Document 684   Filed 03/17/15   Page 4 of 5 PageID: 13654

The Honorable Steve C. Mannion                    -4-                         March 17, 2015

wide variety of issues, including Zimmer's investigation in 2009 of allegations of metallosis related to the Durom Cup (an investigation that Zimmer concluded nearly two years before fact discovery in this MDL began). Indeed, metallosis is a well-known side effect of any metal-on-metal acetabular component, and Zimmer warned about metallosis in the Durom Cup's labeling since 2006. Nothing prevented Plaintiffs from requesting additional discovery on metallosis during the discovery phase of this litigation; they simply did not do so.

More than two years after fact discovery began, in November 2013, the parties jointly agreed (and the Court approved) to conclude common issue fact discovery on May 30, 2014. (Case Management Order Regarding Initial Trial Setting and Pretrial Deadlines at II.A., Dkt. 227). At the same time, the parties jointly agreed (and the Court approved) a schedule for common issue expert disclosures and a framework for picking the first six trial cases. (*Id.* at II.B. and III.). As a result of the extensive fact discovery taken since May 2011, the parties each disclosed numerous experts who addressed a wide range of topics, including metallosis. Specifically, Plaintiffs disclosed three experts who have very clearly addressed, and been deposed on, opinions related to metallosis. In turn, Defendants disclosed three experts to rebut Plaintiffs' expert evidence on metallosis.

In sum, it cannot reasonably be disputed that all common issues related to the Durom Cup, including metallosis, were to be addressed (and were so addressed) pursuant to the common fact and expert discovery schedule that the parties jointly agreed to and that closed months ago. It is simply too late for Plaintiffs to reopen discovery that has already been taken and, thus, Zimmer respectfully requests that the Court not permit additional discovery related to metallosis.

### UPDATED "REVISION RATE"

#### A.   Plaintiffs' Position

Defendant was ordered to disclose an up-to-date revision rate at the hearing held on April 10, 2014. Zimmer complied with that order in a letter dated April 30, 2014, in which it disclosed a revision "ratio" for the Durom acetabular component of 10.25% as of December 31, 2013. Given the passage of time, the provided revision "ratio" is almost certainly no longer accurate. Pursuant to Federal Rule of Civil Procedure 26(e), Plaintiffs have requested that Zimmer amend this discovery response to reflect the current revision "ratio" known to Zimmer. Zimmer is not willing to do so and Plaintiffs now request the Court order this supplement.

#### B.   Zimmer's Position

Zimmer should not be required to do Plaintiffs' work for them by imposing a continuing obligation on Zimmer to spend time and money to calculate a "revision rate" that Plaintiffs never requested and that Zimmer does not track. Indeed, Plaintiffs have never requested that Zimmer state a "revision rate" for the Durom Cup. Instead, Plaintiffs asked the following:

The Honorable Steve C. Mannion -5- March 17, 2015

**SPECIAL INTERROGATORY NO. 2:**
Please IDENTIFY the total number of DUROM CUPS that, to YOUR knowledge, have been removed from patients implanted with the device in the United Sates as of today's date (September 19, 2013), including in your response information pertaining to: (a) the dates on which each such DUROM CUP was implanted and explanted, (b) the date YOU became aware that the DUROM CUP was removed, and (c) the date a Product Experience Report was filed in connection with the removal.

Zimmer already produced the requested complaint data through December 31, 2013, and gladly will supplement that data through February 28, 2015. However, Zimmer should not be ordered to calculate a "revision rate" that it does not independently track. To do so would require Zimmer to engage its expert epidemiologist in a timely and expensive analysis of the complaint data. Although Judge Arleo ordered Zimmer to provide a revision rate *sua sponte*, Zimmer should not be under a continuing obligation to spend time and money to analyze the data and calculate a revision rate that Plaintiffs were equally capable of doing on their own, but did not do so.

We look forward to discussing these issues with Your Honor on March 24, 2015.

Sincerely,

J. Joseph Tanner

cc: All Counsel of Record (via ECF)