**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: ZIMMER DUROM HIP CUP PRODUCTS LIABILITY LITIGATION | Civil Action No. 09-4414<br><br>MDL 2158<br><br>**OPINION**<br><br>September 1, 2015 |

**WIGENTON**, District Judge.

Before this Court are the following motions:

Motion for Clarification Regarding Alleged Waiver of *Lexecon* Venue Rights[1] ("Motion for Clarification") filed by Plaintiffs' Liaison Counsel, Waters & Kraus, LLP ("Plaintiffs' Liaison" or "Plaintiffs") (Dkt. No. 731); and the

Motion to Amend/Correct Order[2] - Foscue Plaintiffs Objection to Waiver of Their Rights to Remand Their Claims for Trial and Motion for Clarification Regarding Alleged Waiver of *Lexecon* Venue Rights ("Motion to Amend/Correct") filed by plaintiffs David Foscue and Teresa Foscue ("Foscue Plaintiffs") (Dkt. No. 732.)

---

[1] "*Lexecon* Venue Rights" refers to a landmark case, *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ("*Lexecon*"), in which the Supreme Court held that a multidistrict litigation transferee court could not transfer a member case to itself for trial pursuant to 28 U.S.C. § 1404(a) without the consent of the parties. Thereafter, the waiver of such rights was referred to as a *Lexecon* waiver.

[2] This Order refers to a Joint Case Management Order re: MDL Trials that was signed by then Magistrate Judge Madeline C. Arleo (now District Judge Arleo) on October 2, 2014. (Dkt. No. 538.)

1

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. §§ 1391, 1407. This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth below, the Foscue Plaintiffs' Motion to Amend/Correct is **GRANTED**. The request for clarification is addressed as set forth herein.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Almost four hundred cases are currently part of a multidistrict litigation ("MDL") before this Court, involving the Durom Cup hip implant, manufactured by Defendant Zimmer, Inc., et al. ("Zimmer" or "Defendant"). This Court coordinated pretrial discovery and held a Bellwether trial in this matter. As this Court writes primarily for the parties, only a brief discussion of the relevant factual background and procedural history is provided.

On November 18, 2013, the Court entered the Case Management Order ("CMO") Regarding Initial Trial Setting and Pretrial Deadlines ("November 18, 2013 CMO"). (Dkt. No. 227.) The November 18, 2013 CMO set up a framework for conducting discovery on the initial eight cases selected for trial ("Initial Trials"). Plaintiffs Christine Brady ("Brady") and Maryann Ruttenbur ("Ruttenbur") were the first two plaintiffs selected for Bellwether trials.

Currently, the firm Waters & Kraus, LLP ("Waters & Kraus") represents approximately 52 of the 388 plaintiffs in the MDL.[3] In September 2014, attorney Kyla Cole ("Cole") of Waters & Kraus allegedly told counsel for Zimmer, Stacy Prall ("Prall"), during a conference call that "she was only willing to discuss waivers for Brady and Ruttenbur and was not discussing waivers for any other cases." (Pls' Liaison Br. at 2.) Further, Plaintiffs' Liaison Counsel contends that

---

[3] These numbers fluctuate as cases are resolved and new cases are filed.

2

subsequent email exchanges and conversations were in the same vein – regarding a waiver of only the first two Bellwether trials in the MDL. (*Id.*)

On October 2, 2014, then Magistrate Judge Arleo signed a Joint Case Management Order re: MDL Trials that was filed on October 3, 2014 ("October 2, 2014 Joint CMO") and sets forth the following: "Trial Location. Plaintiffs and Defendants waive their respective rights under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), to object to self-transfer, and instead, consent to trial of the cases in the MDL by this Court." (Dkt. No. 538, October 2, 2014 Joint CMO, at 1.)

On February 25, 2015, this Court held a status conference regarding the first Bellwether trial for Brady. Plaintiffs' Liaison Counsel asserts that "[t]he first time Plaintiffs learned that Zimmer was taking the position that the parties had agreed to try the cases of all 388 MDL Plaintiffs in the MDL Court" was at this status conference before this Court on February 25, 2015. (Pls' Liaison Br. at 3.) At this point, Cole stated the following on the record during the conference: "I just want to state for the record that liaison plaintiffs' counsel has only waived *Lexecon* for Brady and Ruttenbur, we have not waived it for all of the cases." (*Id.* at 3-4.) Counsel for Zimmer, John Tanner, noted his disagreement on the record. (*Id.* at 4.)

In May 2015, this Court held the Bellwether trial in this matter for Brady. The second Bellwether trial for Ruttenbur settled prior to trial. Currently, two additional matters are scheduled for trial in 2016.

On June 29, 2015, Plaintiffs' Liaison Counsel filed the Motion for Clarification asserting that the *Lexecon* waivers were only entered into for the Brady and Ruttenbur trials. (*See* Dkt. No. 731.) On June 30, 2015, the Foscue Plaintiffs filed the Motion to Amend/Correct the October 2, 2014 Joint CMO. (*See* Dkt. No. 732.) The Foscue Plaintiffs assert that Plaintiffs' Liaison Counsel

3

had no authority to make a *Lexecon* waiver on behalf of them. (*Id.*) Further, they contend that the Foscue Plaintiffs' personal attorney of record was never contacted or consulted by Plaintiffs' Liaison Counsel regarding such a waiver, and to uphold the waiver would be a violation of their due process rights. (*Id.*)

On July 13, 2015, Defendant filed a Response to Plaintiffs' Motion for Clarification. (Dkt. No. 735). On July 13, 2015, Defendant also filed a Response to the Motion to Amend/Correct the Order (Dkt. No. 736.) On July 20, 2015, Plaintiffs' Liaison Counsel filed a Reply in Support of the Motion for Clarification. (Dkt. No. 740.)

**DISCUSSION**

"[V]enue is personal and waivable." *Mann v. Lincoln Elec. Co.*, No. 1:06-CV-17288, 2011 WL 3205549, at *2 (N.D. Ohio 2011) (quoting *Catz v. Chalker*, 142 F.3d 279, 284-85 (6th Cir. 2001), amended by 243 F.3d 234 (6th Cir. 2001)); *see generally Print Data Corp., v. Morse Fin., Inc.*, No. 01-CV-4430 (WGB), 2002 WL 1625412 (D.N.J. July 12, 2002); 28 U.S.C § 1407.[4] A transferee judge may try an action that has been transferred to that judge pursuant to § 1407 if the parties have "waived their entitlement to remand." *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1381 n.4 (J.P.M.L. 2003).

---

[4] Section 1407(a) provides, in relevant part,

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. . .

28 U.S.C. § 1407(a).

In the *Lexecon* matter, cases in a savings, loans, and securities related litigation with tort claims were transferred for pretrial proceedings to a transferee court. 523 U.S. 26. The class action against Lexecon had been transferred for consolidated pretrial proceedings under § 1407(a) along with other cases arising out of related issues. *Id.* at 29. During the pretrial proceedings, a resolution was reached concerning the claims against Lexecon. Subsequently, Lexecon filed a malicious prosecution case, which was transferred by the judicial MDL panel to the transferee court under § 1407(a). *Id.* Lexecon's request to remand the case was not allowed by the transferee court, and the transferee court granted a motion transferring the case to itself for trial under § 1404(a). *Id.* at 30-31. The Supreme Court held that the transferee court did not have authority to hold trials on those cases without the parties' consent or waiver. *Id.* at *27 ("A district court conducting pretrial proceedings pursuant to § 1407(a) has no authority to invoke § 1404(a) to assign a transferred case to itself for trial.").[5]

Here, Plaintiffs' Liaison Counsel first argues that the case conferences established that the parties would agree to *Lexecon* waivers for the two initial trial candidates, Brady and Ruttenbur, but not for all of the remaining trials in the MDL. Plaintiffs provide emails and refer to discussions with counsel for Zimmer, Prall and Regina Rodriguez, regarding *Lexecon* waivers in support of their position. Next, Plaintiffs' Liaison Counsel argues that they would not have the authority to bind all of the plaintiffs in this MDL to *Lexecon* waivers.

In the instant matter, the October 2, 2014 Joint CMO, clearly and unambiguously provides that Plaintiffs' Liaison Counsel, on behalf of Plaintiffs and Defendants, "waive their respective

---

[5] Section 1404(a) permits a district court to transfer a case to any other district where venue is proper, "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. §1404(a). A decision to transfer venue is based on "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995).

rights under [*Lexecon*] to object to self-transfer, and instead, consent to trial of the cases in the MDL by this Court." (Dkt. No. 538); *see also Lexecon*, 523 U.S. 26. This express language of the waiver unequivocally waives the parties' rights for "the cases in the MDL." *See Resolution Trust Corp. v. Minassian*, 777 F. Supp. 385 (D.N.J. 1991) (upholding a "clear and unambiguous" waiver of a right to setoff). Although, certain paragraphs of the October 2, 2014 Joint CMO refer only to Brady and Ruttenbur, it is clear that other portions of the Order were intended to apply to the MDL cases in general.[6] Contrary to Plaintiffs' Liaison Counsel's assertions, the October 2, 2014 Joint CMO is not patently or latently ambiguous. (*See* Pls' Reply, at 2-6.) Thus, the only issues remaining are 1) whether such a waiver may be rescinded by Plaintiffs' Liaison Counsel at this time, and 2) whether there is any limitation regarding the applicability of such a waiver to all 388 MDL cases.

The Supreme Court made it clear that an MDL transferee court does not have authority to conduct the trial of an MDL member case not originally filed in the transferee court without the consent of the parties. *Lexecon*, 523 U.S. at 35. However, once consent is given, the retraction of such a waiver requires a showing of good cause. *See In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789 (JFK), 2011 WL 1584584, at *2 (S.D.N.Y. 2011).

As few cases address the withdrawal of *Lexecon* waivers, relevant cases from outside this circuit that are persuasive will also be discussed herein. In the *Fosamax* case, plaintiffs brought Americans with Disabilities Act ("ADA") lawsuits in an MDL and later sought to withdraw their *Lexecon* waivers so that their cases would be tried in the district courts where the cases were originally filed. 2011 WL 1584584. The court in *Fosamax* found that the plaintiffs had not demonstrated that the ADA provided a legal basis for withdrawal of a *Lexecon* waiver and that

---

[6] The October 2, 2014 Joint CMO was filed on the lead case for the MDL, and Brady and Ruttenbur's individual case numbers are not in the case heading. (Dkt. No. 538.)

6

"good cause" had not been demonstrated. *Id.*; *see also In re Fosamax Prods. Liab. Litig.*, 815 F. Supp. 2d 649 (S.D.N.Y. 2011) (denying reconsideration where plaintiff did not show good cause to withdraw her waiver). Courts have held that a showing of "good cause" would refer to instances of "'fraud, collusion, mistake or duress, or [where] the agreement is unconscionable or contrary to public policy.'" *Fosamax*, No. 06 MD 1789 (JFK), 2011 WL 1584584, at *2 (denying plaintiffs' motions to withdraw their *Lexecon* waivers) (quoting *Kate LLC v. AT&T Corp.*, 607 F.3d 60, 66 (2d Cir. 2010)).

This Court notes that there are not cases directly addressing "good cause" for the revocation of a *Lexecon* waiver within the Third Circuit. *But see In re Patenaude*, 210 F.3d 135 (3d Cir. 2000) (addressing pretrial requests for remand in an MDL, and finding that "because individual settlement negotiations and conferences are ongoing in the plaintiffs' individual cases, and because the transferee court is conducting discovery on overlapping issues that affect many asbestos cases, even if not the plaintiffs', coordinated pretrial proceedings have not concluded, and the plaintiffs have not demonstrated a clear and indisputable right to the relief they seek."). However, a *Lexecon* waiver, allowing a trial to proceed before the transferee court, has been considered as analogous to "a stipulation of fact or a stipulation to proceed for trial before the court without a jury," which may only be withdrawn or invalidated for "good cause." *Fosamax*, 2011 WL 1584584, at *2. Courts in this district have addressed modifications to stipulations and final pretrial orders to avoid "manifest injustice." *See Pharm. Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 59 F. Supp. 2d 408 (D.N.J. 1999) (discussing amendments to final pretrial orders being modified only to prevent manifest injustice). Further, for a party to successfully withdraw from a stipulation, the court must find that the moving party has demonstrated "exceptional circumstances" and, that without relief from the stipulation, the moving party would suffer "manifest injustice." *See E.E.*

*Cruz & Co., Inc. v. Hartford Fire Ins. Co.*, No. 05-1523 (MLC), 2006 WL 3327909 (D.N.J. 2006) (citing *Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998)).

The aforementioned frameworks will be applied to the instant matter. First, while email communications refer to the "location of the MDL trials," it is unclear that the parties' conversations regarding waivers were expressly limited to Brady and Ruttenbur. (*See generally* Pls' Liaison Br.) The ultimate joint order establishes that the rights were waived. Here, the agreement or waiver is not unconscionable or contrary to public policy. Plaintiffs' Liaison Counsel implies that a mistake may have been made, but does not allude to fraud, collusion, or duress. Essentially, Plaintiffs' Liaison Counsel argues that the waiver is revocable and should be revoked because, to the extent that the *Lexecon* waiver was effectuated beyond the cases of Brady and Ruttenbur, it was unintentional and/or a mistake.

Assuming that the *Lexecon* waiver for all plaintiffs documented by the October 2, 2014 Joint CMO was the result of a mistake, Plaintiffs' Liaison Counsel did not take any steps to clarify or correct it until a statement was made on the record by Cole on February 25, 2015. A brief or motion on the issue was not submitted until the end of June 2015, even after the objection was made on the record. Moreover, mere carelessness would not constitute good cause to rescind the waiver. "[I]n order to grant rescission [of a settlement agreement] in the case of a factual mistake, 'the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake." *Weisman v. N J Dept. of Human Servs.*, 593 F. App'x 147, 151 (3d Cir. 2014) (addressing a request to rescind a settlement agreement) (internal citation omitted). Additionally, as in *Fosamax*, the parties here have relied on the waiver to a certain extent, during the discovery and Bellwether selection phases of this litigation.

Second, as Plaintiffs alternatively argue, this waiver would not necessarily extend to plaintiffs that Plaintiffs' Liaison Counsel does not represent.[7] *Lexecon* waivers have been held to be binding when entered into on behalf of plaintiffs by other designated counsel in an MDL. *See generally Baxter v. Lincoln Elec. Co.*, 2012 WL 112526 (N. D. Ohio 2012) (holding that the waiver of venue rights for initial Bellwether trials was binding on those specific plaintiffs). The *Baxter* case, citing *Solis v. Lincoln Elec. Co.*, 2006 WL 266530 (N.D. Ohio 2006), stated that "the *Solis* opinion made clear that, absent an explicit understanding otherwise: (1) any and every case chosen for a bellwether trial would be tried in the Northern District of Ohio [transferee court]; (2) the plaintiff in every such case, by virtue of having agreed to be among the cases that could be chosen as a bellwether, waived his right to seek remand pursuant to § 1407; and (3) MDL Lead Counsel's agreements to this effect were binding on individual plaintiffs." *Id.* at *4.

Here, the Court granted Plaintiffs' Liaison Counsel the authority to "[b]ind the plaintiffs in . . . entering into stipulations, and in other necessary interactions with defense counsel." (Dkt. No. 17, CMO No. 1, at 8.) Plaintiffs' Liaison Counsel distinguish themselves from "lead counsel" as in the *Solis* case, arguing they are merely co-liaison counsel. Even assuming Plaintiffs' Liaison Counsel had the ability to waive *Lexecon* rights for all plaintiffs in the MDL in certain circumstances, such action would necessitate additional documentation and discussion with the plaintiffs and/or plaintiffs' counsel for the individuals that Waters & Kraus does not represent.

This Court finds that Plaintiffs' Liaison Counsel did agree to waive *Lexecon* rights beyond plaintiffs Brady and Ruttenbur. Specifically, the waiver in the October 2, 2014 Joint CMO was

---

[7] "Even if the Court is persuaded that Plaintiffs other than Brady and Ruttenbur 'clearly and unambiguously' waived their [*Lexecon*] rights in the Joint Case Management Order Regarding MDL Trials, and that the waiver cannot be rescinded, the waiver certainly cannot be enforced on any of the Plaintiffs not directly engaged by consent in the bellwether test case process, and who are not directly represented by Liaison counsel." (Pls' Liaison Br. at 11-12; see also Def.'s Opp'n at 8.)

9

for all of the plaintiffs represented by Waters & Kraus. This waiver will not be extended to all 388 cases that remain, but it cannot be rescinded for the plaintiffs that Plaintiffs' Liaison Counsel represents, as neither good cause nor exceptional circumstances, have been demonstrated. Given the facts, Plaintiffs' Liaison Counsel had an opportunity to protest or voice concern when the October 2, 2014 Joint CMO was filed if they believed there was an error, or to indicate that something contrary to the parties' agreement regarding the *Lexecon* waiver was documented. More importantly, Plaintiffs' Liaison Counsel has not demonstrated good cause for why the waiver should be vacated.

**CONCLUSION**

For the reasons set forth above, the Foscue Plaintiffs' Motion to Amend/Correct is **GRANTED** and the *Lexecon* waiver applies to all of the plaintiffs retained by Water & Kraus. Counsel for both parties are directed to meet and confer regarding individual plaintiffs, not represented by Water & Kraus, who wish to return to their original filing jurisdiction.

s/ Susan D. Wigenton, U.S.D.J.

Orig:     Clerk
cc:       Steven C. Mannion, U.S.M.J.
          Parties