## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: ZIMMER DUROM HIP CUP PRODUCTS LIABILITY LITIGATION | 2:09-cv-04414-SDW-MCA<br><br>MDL-2158<br><br>This Document Relates To All Waters & Kraus Cases |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION SEEKING DISBURSEMENTS FROM COMMON BENEFIT FUND

## Table of Contents

I. INTRODUCTION ................................................................................................1
II. BACKGROUND .................................................................................................4
    A. Waters & Kraus ........................................................................................5
        1. The scope of Waters & Kraus' common benefit
           work was massive. ......................................................................5
        b. Trials ...............................................................................................6
        2. Common Benefit Expenses ..........................................................7
        3. Common Benefit Hours ...............................................................7
    B. Pogust Braslow & Millrood .....................................................................8
        1. Common Benefit Expenses ..........................................................8
        2. Common Benefit Hours ...............................................................8
    C. Lieff Cabreser .........................................................................................8
III. DISCUSSION......................................................................................................9
IV. CONCLUSION..................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                                                                              **Page (s)**

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenflueramine)*
　　*Prods. Liab. Litig.*,
　　No. 1203, 1999 WL 124414, at *3 (E.D. Pa. Feb. 10, 1999) ........................13

*In re MGM Grand Hotel Fire Litigation*,
　　660 F. Supp. 522, 528 (D. Nev. 1987) .........................................................12

*In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
　　982 F.2d 603, 606 (1st Cir. 1992) ...................................................................5

*In re Zyprexa Prods. Liab. Litig.*,
　　467 F. Supp. 2d 256, 265 (E.D.N.Y. 2006) ....................................................4

*Turner v. Murphy Oil USA, Inc.*,
　　422 F. Supp. 2d 676, 680 (E.D. La. 2006) .....................................................5

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH) .......................................................4, 5

COME NOW Plaintiffs, by and through their undersigned Liaison Counsel, and file this Motion Seeking Disbursements from Common Benefit Fund, and will show as follows:

## I.     INTRODUCTION

"In a consolidated national mass litigation . . . it is standard practice for the courts to compensate attorneys who work for the common benefit of all plaintiffs by setting aside a fixed percentage of settlement proceeds."[1] According to the MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.927, the role of this so-called liaison counsel or steering committee, broadly speaking, is "to litigate common issues and prepare the case[s] for trial or settlement."[2]

The rationale for this practice, which deviates from the default "American rule" of making each party bear its own costs, is simple.  As the First Circuit explained in 1992:

> [W]hen a court consolidates a large number of cases, stony adherence to the American rule invites a serious free-rider problem.  If a court hews woodenly to the American rule under such circumstances, each attorney, rather than toiling for the common good and bearing the cost alone, will have an incentive to rely on others to do the needed work, letting those others bear all the costs of attaining the parties' congruent goals.[3]

---

[1] *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 265 (E.D.N.Y. 2006).
[2] MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.927.
[3] *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992) (citation omitted).

To avoid the "free-rider" problem discussed by the First Circuit, *supra*, "the U.S. Supreme Court over 125 years ago approved the common benefit doctrine . . . ."[4] "In accordance with the common benefit doctrine, it has been a common practice in federal courts to impose set-asides in the **early stages of complex litigation** in order to preserve common-benefit funds for later distribution."[5] Consistent with the emphasized language, the MANUAL FOR COMPLEX LITIGATION (FOURTH) advises that the percentage and procedures pertaining to the common benefit fund should be established at the outset of the litigation.[6] Establishing "guidelines and procedures" applicable to the common benefit fund early in the litigation will, the authors write, "lighten the burdens on the participants, **clarify expectations**, and reduce the opportunities for disputes."[7]

In the instant litigation, this Court faithfully followed the guidance of the above-cited authorities. To wit, in the MDL's earliest days, the Court entered Case Management Order No. 3 [Doc. 33] ("CMO No. 3"), with the stated purpose of:

> [P]rovid[ing] for the fair and equitable sharing among plaintiffs of the cost of services performed and expenses incurred by Plaintiffs' Liaison Counsel and other attorneys acting for and providing a common benefit [for] all plaintiffs in this complex litigation[.][8]

---

[4] *Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676, 680 (E.D. La. 2006) (citations omitted).
[5] *Id*. (citations omitted) (emphasis added).
[6] MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.211 (May 2017 Update) ("Judges should consider advising the parties at the outset of the litigation about the method to be used for calculating fees and, if using the percentage method, about the likely range of percentages.").
[7] *Id*. (emphasis added).
[8] Case Management Order No. 3 [Doc. 33] (hereinafter, "CMO No. 3") at 1.

2

CMO No. 3 clarified the expectations of all parties, including Plaintiffs' Liaison Counsel, by establishing: (a) a set common benefit assessment for all settlements and verdicts of four percent;[9] and (b) standards and procedures for counsel seeking fee and expense reimbursement from the common benefit fund.[10] As to the latter, CMO No. 3 provided detailed guidelines for both "time reporting" and "expense reporting."[11] Among other things, those guidelines specified that any counsel "seeking fees from the Common Fund is required to maintain contemporaneous and detailed time and expense records."[12]

CMO No. 3 also expressly identified who would be eligible to seek fees and expense reimbursement from the common benefit fund. Specifically, paragraph 10 stated:

> Payments may be made from the Common Benefit Fund to attorneys who provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client(s), including services provided and expenses incurred in preparation and trial of the bellwether cases. **Attorneys eligible thereto are limited to Plaintiffs' Liaison Counsel**, and **other attorneys performing responsibilities approved by Plaintiffs' Liaison Counsel** in MDL-2158.[13]

With those guidelines in place, CMO No. 3 further states, "The Court shall receive and consider recommendations from Plaintiffs' Liaison Counsel concerning

---

[9] *See id.* at ¶ 3.
[10] *See id.* at ¶ 9.
[11] *Id.*
[12] CMO No. 3 at ¶ 9.c.
[13] *Id.* at ¶ 10 (emphasis added).

3

distribution of the Common Benefit Fund."[14] All disbursements pursuant to those recommendations, in turn, must be approved by the Court.[15]

## II. BACKGROUND

Case Management Order No. 1 [Doc. 17], entered on September 23, 2010, established Plaintiffs' Liaison Counsel in this litigation. Plaintiffs' Liaison Counsel is currently comprised of the following attorneys: Gibbs Henderson ("Henderson") of Waters & Kraus, Wendy Fleishmann ("Fleishmann") of Lieff Cabraser, Derek Braslow ("Braslow") of Pogust Braslow & Millrood, James Cecchi of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., and Chris Seeger of Seeger Weiss LLP.[16]

Consistent with the common benefit system put in place by the Court and discussed in the previous section, Waters & Kraus and Lieff Cabraser submitted a request to the Court for reimbursement of common benefit expenses on March 11, 2015.[17] Included within that request was a sworn declaration documenting expenses of $290,324.64 for Waters & Kraus and $36,973.04 for Lieff Cabraser.[18] Pursuant to that request and CMO No. 3, the Court entered an order on March 24, 2015

---

[14] *See id.* at ¶ 9.
[15] *See id.* at ¶ 13.
[16] *See* Case Management Order No. 1 [Doc. 17], dated Sept. 23, 2010, at ¶ 20; Agreed Case Management Order Supplementing Plaintiffs' Liaison Counsel [Doc. 184], June 13, 2013; and Order Granting Plaintiffs' Motion to Substitute Counsel [Doc. 730], dated June 26, 2015.
[17] **Exhibit I**, Letter from Kyla Cole to the Honorable Steven Mannion ("Letter from K. Cole to Hon. S. Mannion"), dated Mar. 11, 2015.
[18] *Id.* at Decl. of Kyla G. Cole.

4

permitting payment to Waters & Kraus and Lieff Cabraser out of the common benefit fund in the requested amounts.[19]

On February 2, 2018, Henderson sent a letter to his fellow members of Plaintiffs' Liaison Counsel inviting each firm to submit its recorded expenses and hours for the purpose of a joint submission seeking the division and disbursement of the common benefit fund.[20] Henderson also noted that, as of December 12, 2017, there was $3,288,170.40 in the common benefit fund.[21] To date, Henderson has received submissions in response to his request from Braslow of Pogust Braslow & Millrood, who provided an accounting of his common benefit hours, and Fleishmann of Lieff Cabraser, who has indicated that she will be supplementing expenses and hours for consideration by the Court.

## A. Waters & Kraus

### 1. The scope of Waters & Kraus' common benefit work was massive.

#### a. Discovery

After some very preliminary common issue discovery was undertaken in 2011, no meaningful discovery in this action took place until March of 2013. At that time, Zimmer started producing documents and offering witnesses for deposition as a result of the significant efforts of Waters & Kraus to overcome

---

[19] Order [Doc. 694], dated Mar. 25, 2015.
[20] *See* **Exhibit C**, Letter from G. Henderson to Co-Liaison Counsel, dated Feb. 2, 2018.
[21] *See id.* at 2.

5

Zimmer's resistance to allowing any discovery in this case. Plaintiffs' Liaison Counsel performed a massive review of the documents ultimately produced by Zimmer during the summer of 2013, and ultimately began taking common issue depositions in the fall of 2013.

The scope of this work undertaken by Waters & Kraus is staggering. A list of depositions related to common issue discovery, as well as those taken in preparation of the first two bellwether trials, all coordinated and conducted by Waters & Kraus, is attached hereto as **Exhibit A**. A declaration containing a numerical summary of how many documents were reviewed by Waters & Kraus is attached hereto as **Exhibit B**.

      b.    Trials

After a grueling and intensive period of fact and expert discovery, the first Zimmer Durom Cup trial took place in November of 2014. Although this trial took place in Illinois state court, it was tried by Waters & Kraus utilizing common issue discovery conducted in the MDL. That trial resulted in a defense verdict, as did two subsequent trials in Illinois state court and the MDL. However, in July 2015, Waters & Kraus, again using common issue discovery conducted in the MDL, obtained a $9.1 million verdict in a state court action in Los Angeles, California –

the first plaintiffs' verdict in the United States in a Durom Cup case.[22] All four of the bellwether trials conducted by Waters & Kraus lasted multiple weeks and involved multiple attorneys.

### 2. Common Benefit Expenses

Waters & Kraus' out-of-pocket, case-related expenses are itemized within **Exhibit D** and total to $1,079,033.89. These expenses relate specifically to pleading costs, deposition reporting services, expert witness fees, travel, printing and copying, document translation, teleconferencing, and other critical expenditures. Taking into consideration the previously reimbursed expenses of $290,324.64[23], Waters & Kraus' remaining expenses currently total to $788,709.25.

### 3. Common Benefit Hours

Waters & Kraus attorneys, paralegals, and support staff recorded over 3,846.2 hours spent on common benefit work, as reflected by **Exhibit E**. When valuing the time of Waters & Kraus' attorneys pursuant to the Faegre Baker Daniels LLP billing rates for product liability practice area work, as reported in the Valeo 2017 Healthcare Attorney Hourly Rate Report, attached as **Exhibit G**, and according to the seniority of the attorneys, that value totals $1,477,417.26. When valuing the time of Waters & Kraus' paralegals, law clerks, and support staff, as reported in the

---

[22] Following the California trial, the Court granted Defendant's motion for a new trial and denied Defendant's motion for a JNOV. Both of these issues are currently on appeal.
[23] *See* Exhibit I, Letter from K. Cole to Hon. S. Mannion at Decl. of Kyla G. Cole.

U.S. Attorney Office's Attorney's Fees Matrix for 2015-2017, **Exhibit H**, that value totals $101,001.24. As a result, the total value of Waters & Kraus' case-related efforts amounts to $1,578,418.50.

**B.     Pogust Braslow & Millrood**

    **1.     Common Benefit Expenses**

Pogust Braslow & Milrood did not incur any common benefit expenses in its role as Plaintiffs' Liaison Counsel.

    **2.     Common Benefit Hours**

Braslow, senior partner at Pogust Braslow & Milrood, recorded 42.8 hours spent on common benefit work, as reflected by **Exhibit F**. When valuing that time pursuant to the Faegre Baker Daniels LLP billing rates for product liability practice area work, as reported in the Valeo 2017 Healthcare Attorney Hourly Rate Report, and according to the seniority of Mr. Braslow, the value of Pogust Braslow & Milrood's case-related efforts totals $23,154.80.

**C.     Lieff Cabreser**

Lieff Cabreser has informed the undersigned counsel that it is in the process of compiling its common benefit expenses and hours, and will promptly supplement once that process is complete.

## III. DISCUSSION

As the District Court of Nevada explained in *In re MGM Grand Hotel Fire Litigation*, 660 F. Supp. 522, 528 (D. Nev. 1987), a court attempting to determine the necessity and adequacy of common benefit fund distributions must take into account the "contingency factor," which it described as "the [plaintiffs' liaison counsel's] legal and financial risk in undertaking [the litigation]."[24] As the court further explained:

> if . . . the litigation is lengthy and complex, [plaintiffs' liaison counsel] suffers the risk of nonpayment over a longer period of time. The risk, thus, includes the scope of [plaintiffs' liaison counsel's] professional burden as viewed at the outset, the number of hours expended without guarantee of payment, and the delay in the receipt of payment.[25]

In the instant matter, paragraph 9 of CMO No. 3 states, *inter alia*:

- "The Court shall receive and consider recommendations from Plaintiffs' Liaison Counsel concerning distribution of the Common Benefit Fund";

- Submissions for fees and expense reimbursement should include "time reporting" and "expense reporting" consistent with the provisions of CMO No. 3; and

- Requests by Plaintiffs' Liaison Counsel for attorneys' fees and reimbursement of expenses "will be set at a time and in a manner established by the Court, after due notice to all counsel."[26]

---

[24] *In re MGM Grand Hotel Fire Litigation*, 660 F. Supp. 522, 528 (D. Nev. 1987).
[25] *Id.*
[26] CMO No. 3 at ¶ 9.

9

Based on the authority and information contained in the previous sections, *supra*, Waters & Kraus, Lieff Cabraser, and Pogust Braslow & Millrood – constituting three-fifths of Plaintiffs' Liaison Counsel – recommend that they be reimbursed for the common benefit expenses they incurred and documented in the following amounts:

- Waters & Kraus: $ 788,709.25;[27]
- Pogust Braslow & Milrood: $ 0; and
- Lieff Cabraser: TBD.[28]

Based on the authority and information contained in the previous sections, *supra*, Waters & Kraus, Lieff Cabraser, and Pogust Braslow & Millrood – constituting three-fifths of Plaintiffs' Liaison Counsel – recommend that they be paid fees for the common benefit work they performed and documented in the following amounts:

- Waters & Kraus: $ 1,578,418.50;
- Pogust Braslow & Millrood: $ 23,154.80; and
- Lieff Cabreser: TBD.[29]

---

[27] Although CMO No. 3 is silent on the issue, it is customary for expenses to be reimbursed out of common benefit funds before fees are paid. *See, e.g., In re Diet Drugs (Phentermine/Fenfluramine/Dexfenflueramine) Prods. Liab. Litig.*, No. 1203, 1999 WL 124414, at *3 (E.D. Pa. Feb. 10, 1999) ("In making such an award, the Court will first determine the amount of costs for which reimbursement is appropriate. The amount remaining in the [common benefit fund] after deducting the amount of costs awarded by the Court will be available for any award of counsel fees.").

[28] Leiff Cabraser's common expenses to be supplemented.

[29] Leiff Cabraser's common benefit hours and resultant fees to be supplemented.

Further, based on paragraph 9 of CMO No. 3, Waters & Kraus, Lieff Cabraser, and Pogust Braslow & Millrood – constituting three-fifths of Plaintiffs' Liaison Counsel – request an order be entered effectuating the disbursement recommendations set out above.

## IV. CONCLUSION

Based on the foregoing reasons, Plaintiffs' Counsel Waters & Kraus requests that the Court enter an order granting disbursements from the Common Benefit Fund in the above-referenced amounts.

DATED: April 18, 2018

Respectfully submitted,

**WATERS & KRAUS, LLP**

*/s/ Gibbs C. Henderson*
Gibbs C. Henderson
3141 Hood Street, Suite 700
Dallas, Texas 75219
(214) 357-6244
(214) 357-7252 (facsimile)
ghenderson@waterskraus.com

**ATTORNEYS FOR PLAINTIFFS**