# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: ZIMMER DUROM HIP CUP PRODUCTS LIABILITY LITIGATION | 2:09-cv-04414-SDW-MCA<br>MDL-2158<br><br>This Document Relates To All Cases |

---

## REPLY BRIEF IN FURTHER SUPPORT OF MOTION OF PLAINTIFFS' CO-LIAISON COUNSEL FOR STAY AND RECONSIDERATION OF COURT ORDER ALLOCATING AND DISBURSING FEES AND EXPENSES FROM COMMON BENEFIT FUND

---

James E. Cecchi
CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
Fax: (973) 994-1744

Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road
Ridgefield Park, NJ 07660
Tel: (973) 639-9100
Fax: (973) 639-9393

*Plaintiffs' Co-Liaison Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES......................................................................... ii

PRELIMINARY STATEMENT .................................................................. 1

ARGUMENT ............................................................................................. 2

THE COURT SHOULD STAY, RECONSIDER, AND VACATE ITS ORDER
DISBURSING THE COMMON BENEFIT FUND ................................................. 2

A.   Waters & Kraus Fails to Address the Reconsideration Standards And
     Relevant Precedents ........................................................................... 2

B.   Disbursement of Any Common Benefit Funds to Waters & Kraus
     Would Not Comply With CMO No. 3 ............................................. 3

C.   Waters & Kraus Demonstrates No Common Benefit Work That
     Conferred a Substantial Benefit ...................................................... 8

D.   The Common Benefit Work of Messrs. Seeger and Cecchi is Not at
     Issue Here and, In Any Event, That Work Clearly Conferred a
     Substantial Benefit on the Plaintiffs ............................................ 13

CONCLUSION ....................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adesanya v. Novartis Pharm. Corp.*,
   2017 WL 3584204 (D.N.J. Aug. 18, 2017)..........................................................4

*Atkins v. United States*,
   1990 WL 126196 (D.N.J. 1990)...........................................................................4

*In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*,
   2012 WL 6923367 (E.D. Pa. Oct. 19, 2012)........................................................3

*In re Chinese Manufactured Drywall Prod. Liab. Litig.*,
   2017 WL 2290198 (E.D. La. May 25, 2017).........................................................5

*In re Diet Drugs Prod. Liab. Litig.*,
   582 F.3d 524 (3d Cir. 2009).............................................................3, 5, 8, 13

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)..........................................................................2, 3

*In re NuvaRing Prod. Liab. Litig.*,
   2014 WL 7271959 (E.D. Mo. Dec. 18, 2014) ......................................................5

*In re Oral Sodium Phosphate Sol.-Based Prod. Liab. Action*,
   2010 WL 5058454 (N.D. Ohio Dec. 6, 2010).....................................................12

*Rode v. Dellarciprete*,
   892 F.2d 1177 (3d Cir. 1990)...............................................................................3

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
   268 F. Supp. 2d 907 (N.D. Ohio 2003)........................................................12, 13

*United States v. Genser*,
   582 F.2d 292 (3d Cir. 1978).................................................................................8

*In re Vioxx Prod. Liab. Litig.*,
   2011 WL 572394 (E.D. La. Jan. 20, 2011).........................................................5

*In re Zimmer Durom Hip Cup Prods. Liab. Litig.*,
   2015 WL 10985009 (D.N.J. Dec. 21, 2015) ....................................................... 10

**State Cases**

*Kline v. Zimmer, Inc.*,
   2018 WL 1980957 (Cal. Ct. App. Apr. 27, 2018) ............................................. 13

**Rules**

Fed. R. Civ. P. 16(b) ..................................................................................................... 8

**Other Authorities**

S. Todd Brown, *Plaintiff Control and Domination in Multidistrict
   Mass Torts*, 61 Clev. St. L. Rev. 391, 404 (2013) ............................................ 15

## PRELIMINARY STATEMENT

Plaintiffs' Co-Liaison Counsel Christopher A. Seeger and James E. Cecchi submit this reply in further support of their motion for reconsideration and a stay of the Court's June 7, 2018 Order, which granted Waters & Kraus LLP's motion for disbursement of fees and expenses from the Common Benefit Fund ("CBF"). The Court should, respectfully, stay its June 7 Order, grant the motion for reconsideration, and ensure that any disbursement of the CBF is based upon an orderly, fair, and transparent process that equitably allocates the CBF.

Waters & Kraus has failed to demonstrate that the June 7 Disbursement Order allocating approximately 66% of the CBF to itself complies with controlling precedent governing the award of attorney's fees and with Case Management Order ("CMO") No. 3. In addition, Waters & Kraus has failed to demonstrate that it performed common benefit work that conferred a substantial benefit on all the MDL plaintiffs— certainly not in the amount of 66% of a fund created by a settlement they opposed. To the contrary, rather than confer such a benefit, it has sought to advance the interests of its own individual clients at the expense of the interests of the MDL plaintiffs, and hindered, opposed and delayed the global settlement that was ultimately reached in this matter and which created the very CBF at issue.

The actions of Waters & Kraus in this matter worked toward the common detriment of the plaintiffs. Its motion for disbursement should also be rejected because its request for fees and expenses for itself now appears to be a unilateral request by a single member of the Plaintiffs Liaison Committee, and is opposed by a majority of PLC members, Messrs. Seeger and Cecchi, and Wendy Fleishman, as not in accordance with the requirements of CMO No. 3. As demonstrated by the reconsideration motion of Messrs. Cecchi and Seeger, their efforts in negotiating and reaching the Court-approved global settlement—of which Waters & Kraus had no part in—clearly amounts to significant common benefit work that conferred a substantial benefit on all of the plaintiffs.

## ARGUMENT

### THE COURT SHOULD STAY, RECONSIDER, AND VACATE ITS ORDER DISBURSING THE COMMON BENEFIT FUND

### A.    Waters & Kraus Fails to Address the Reconsideration Standards And Relevant Precedents

Waters & Kraus neglects to actually address whether reconsideration is warranted here to correct a clear error of fact or law or to prevent a manifest injustice, and ignores the controlling decisions that have been overlooked. *See, e.g.*, *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 192, 194-200 (3d Cir. 2000) (reversing attorney fee award where motion for reconsideration had challenged order that did not explain reasons and that it did not apply relevant

2

criteria for determining award). Tellingly, Waters & Kraus carefully avoids addressing *Gunter*, as well as numerous other relevant precedents cited in the motion for reconsideration brief. *See* D.E. 986-1, at 10, 11, 14-16 (citing cases); *see also In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 537-53 (3d Cir. 2009); *In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, 2012 WL 6923367, at *2-10 (E.D. Pa. Oct. 19, 2012).   That alone should be deemed fatal to its disbursement request because, although Messrs. Seeger and Cecchi bear the burden on their motion for reconsideration, Waters & Kraus, as "[t]he party seeking attorney's fees[,] has the burden to prove that its request for attorney's fees is reasonable.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citation omitted).  It has not met that burden here.

**B.     Disbursement of Any Common Benefit Funds to Waters & Kraus Would Not Comply With CMO No. 3**

Waters & Kraus also fails to demonstrate compliance with CMO No. 3 as previously argued by Messrs. Seeger and Cecchi.  *See* Waters & Krause Response ("Response"), at 11-12, 21-24; Plaintiffs' Opening Brief ("Pls. Br.") at 12-14.  As to CMO No. 3's requirement that "[r]eimbursement for costs and/or fees of all plaintiffs' counsel . . . be set at a time and in a manner established by the Court, after due notice to all counsel," D.E. 33 ¶ 9, Waters & Kraus unpersuasively points

3

to its *own motion* seeking disbursements to *itself* and two other member firms of the Plaintiffs' Liaison Committee ("PLC").   Response, at 21-22.[1]

Waters & Kraus further fails to show the Court "receive[d] and consider[ed] recommendations from the PLC concerning distribution of the Common Benefit Fund," pursuant to CMO No. 3 ¶ 9.  Instead, Waters & Kraus characterizes its own April 18 motion for disbursement of the CBF as "the recommendation of the PLC *Majority*."   Response, at 22 (emphasis added).   There is, however, no "PLC Majority" contemplated by CMO No. 3.  To the contrary, if any "recommendation" of the PLC was to be sent to the Court for its consideration, it should have been a recommendation filed by, or on behalf of, *all* members of the PLC, not a *motion* filed by *Waters & Kraus* and *seeking disbursement of funds to itself* and two PLC member firms (if any member desired to dissent from any such recommendation, that opportunity certainly was available).  And any "recommendation" should have been a recommendation concerning "reimbursement for . . . *all plaintiffs' counsel*," CMO No. 3 ¶ 9 (emphasis added), not a few counsel of Waters & Kraus' choosing.

---

[1]  Waters & Kraus argues that Messrs. Seeger's and Cecchi's filing of two letters in response to its disbursement motion—letters detailing a common practice for disbursement of a common benefit fund and a practice envisioned by CMO No. 3, D.E. 973, 979—fails to comply with the Local Rules and amounts to no "response." Response, at 1-2, 17-18.  That argument is unavailing. "[C]ourts in this District routinely accept letter briefs, particularly in matters that do not require full briefing." *Adesanya v. Novartis Pharm. Corp.*, 2017 WL 3584204, at *1 n.3 (D.N.J. Aug. 18, 2017); *Atkins v. United States,* 1990 WL 126196, at 3 n.4 (D.N.J. 1990) (same).

Further, any "recommendation" to the Court should not be in the form of a *motion* by PLC member seeking disbursement for itself and two other firms.[2]

Any notion of a "PLC Majority" as envisioned by Waters & Kraus is dispelled by the June 28 letter of Co-Liaison Counsel Wendy Fleishman of Lieff Cabraser, who agrees that Waters & Kraus' disbursement motion contradicts CMO No. 3 and that a process should be put in place to allow all plaintiffs' counsel to request reimbursement for common benefit time and to permit the PLC to evaluate such requests and submit them to the Court. *See* D.E. 989.

Also, any basis for a "recommendation" was never provided to the PLC by Waters & Kraus for its own reimbursement request. Waters & Kraus argues that a letter sent on February 2, 2018 by Gibbs "Henderson . . . to his fellow members of Plaintiffs' Liaison Counsel inviting each firm to submit its recorded expenses and hours for the purpose of a joint submission" suffices as the sort of

_____

[2]  *See, e.g., In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d at 533 ("Plaintiffs' Liaison Counsel . . . submitted to the [district] [c]ourt a thirty-volume compendium containing the fee presentations" from "seventy-two firms," who had "provided their records to the auditor"); *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 2290198, at *2 (E.D. La. May 25, 2017) ("As described in PTO 28, the Fee Committee was tasked with *making a recommendation to the Court* regarding the allocation of the fee award between common benefit and contract attorneys.") (emphasis added); *In re NuvaRing Prod. Liab. Litig.*, 2014 WL 7271959, at *5 (E.D. Mo. Dec. 18, 2014) ("As directed by this Court, Liaison Counsel provided to the Special Master an organized and detailed accounting of all submitted time and expenses submissions from 21 different firms."); *In re Vioxx Prod. Liab. Litig.*, 2011 WL 572394, at *1 (E.D. La. Jan. 20, 2011) (Fee Allocation Committee received input from each fee applicant and then submitted final recommended allocation to court).

"recommendation" contemplated by CMO No. 3. D.E. 972-1, at 5.[3] One problem with this assertion is that Waters & Kraus never provided its hours, expenses, and details of common benefit work to the PLC for its review and to make a "recommendation" to the Court. CMO No. 3 states that "[t]ime and expense reports shall be submitted" to PLC member Wendy Fleishman, CMO No. 3 ¶ 9(a)(vi), and that the PLC "shall review time and expense submissions to determine" if they are "reimbursable," *id.* ¶ 9(c)(vi). As Ms. Fleishman's June 28 letter states, "PTO 3 contemplates a system of division of time but no one has forwarded their time [to her]. I was serving as the gatekeeper for common benefit time and expenses, but have not received anywhere near the claimed time." ECF 989. Thus, the PLC had no basis to provide a "recommendation" to the Court as to the disbursement request of Waters & Kraus—which has not complied with, and seeks to circumvent, this process.[4]

---

[3] Rather than sending his letter via an email from a paralegal to his colleagues on the PLC (which is what occurred), Mr. Henderson should have sent it to all Plaintiffs' counsel by posting it on the ECF system.

[4] Another problem with Waters & Kraus' claim that it has complied with the process is that "[r]eimbursement" was to be "set at a time and a manner established by the Court, after due notice to all counsel," CMO No. 3 ¶ 9, not unilaterally by Waters & Kraus through an email to other PLC members setting forth its own plan. Although Waters & Kraus argues that Messrs. Cecchi and Seeger cannot complain since it gave them "an opportunity to participate in the process," Response, at 24-25, Waters & Kraus never had any authority in the first place to give any such opportunity, nor was such unilateral authority contemplated by CMO No. 3.

While Waters & Kraus argues that "all members of the PLC Majority provided documentation" for their disbursement request, and that other PLC members had an opportunity to review them, no such documentation was disclosed until it was filed as part of its *motion for disbursement*. Such a motion practice is not contemplated by CMO No. 3, which envisions a "determination" by the PLC of disbursement requests from plaintiffs' counsel, an opportunity for each plaintiffs' counsel to respond to any such determination, and a "recommendation" by the PLC on behalf of all plaintiffs' counsel. CMO No. 3 ¶¶ 9, 9(c)(vi).[5]

Waters & Kraus has also provided no evidence as to any showing that it provided any services or incurred any expenses for the "joint and common benefit of plaintiffs in addition to their own client(s)." CMO No. 3 ¶ 10. *See* Pls. Br. at 13-14. In fact, the brief of Waters & Kraus is bereft of any information or argument on this issue. *See* Response, at 24-30. The section of its brief dedicated to discussing "the efforts of Waters & Kraus" concentrates mainly on attacking Messrs. Cecchi and Seeger. *See id.* In a single paragraph and six footnotes, Waters & Kraus argues that it engaged in joint and common benefit work. *Id.* at 27-28. But as discussed below, that work did not confer a *substantial* common benefit, *In re Diet Drug*, 582 F.3d at 546-48, and instead amounted to work that

---

[5]   Even the February 12, 2018 letter from Waters & Kraus to Co-Liaison Counsel recognized that the PLC members would make a "joint *recommendation* to the Court." Response, at 23 (emphasis added). Apparently, however, Waters & Kraus did not heed its own observation when it filed its motion for disbursement.

benefited, if at all, its individual clients.  Finally, if Waters & Kraus thinks CMO No. 3 should be interpreted as it now argues, it should have sought modification of it pursuant to Fed. R. Civ. P. 16(b) based on "good cause."  But it never did that.

## C.   Waters & Kraus Demonstrates No Common Benefit Work That Conferred a Substantial Benefit

Waters & Kraus relies on arguments in its briefs to show that it performed qualifying common benefit work.  D.E. 972-1, at 5-8; 990-1, at 27-28.  It is well settled, however, that "'[s]tatements made by counsel in their briefs are not evidence.'" *United States v. Genser*, 582 F.2d 292, 311 (3d Cir. 1978).

The only other evidence that Waters & Kraus relies upon as common benefit work is Exhibit A, detailing what Waters & Kraus characterizes as "Common Benefit Depositions"; Exhibit B, the January 26, 2015 declaration of George G. Tankard, III, which asserts that "33,216" of the documents "placed into the MDL Database" "were reviewed by Waters & Kraus," and that of those, "27,047 documents were reviewed for some purposes related to some aspect of the plaintiffs' Zimmer Durom Cup common issue liability case work up," D.E. 972-4; and Exhibit E, the June 28, 2018 Declaration of Gibbs Henderson (D.E. 990-6). *See* D.E. 990-1, at 27.  None of these documents, however, shows any common benefit work by Waters & Kraus that conferred a *substantial benefit*, and Waters & Kraus argues nowhere that it does.  D.E. 972-1; D.E. 990-1, at 27-28.  Nor can routine document review remotely justify a disbursement of 66% of the CBF.

8

The June 28 declaration of Gibbs Henderson, for example, merely states that "[b]etween 2012 and 2018 WK *received* and *accommodated requests* from at least 12 different firms representing Zimmer Durom Cup plaintiffs either in the MDL or state court," and that [t]he materials requested [by them] and *shared* [with them] included documents produced by Zimmer, deposition transcripts, trial transcripts, and attorney work product." Exhibit E, Henderson Decl. ¶¶ 2-3 (emphasis added). This vague assertion lacks any indication showing that this work conferred a substantial common benefit. Indeed, Mr. Henderson indicates that this work may have been for plaintiffs in "state court," *see id.* ¶ 2, but any such non-MDL work is *not* common benefit work. *See* CMO No. 3 (D.E. 33) ¶ 11 (deleting paragraph recognizing state court-related work as eligible). Mr. Henderson further asserts that the eligible common benefit work took place between 2012 and 2015, but he fails to mention that on March 24, 2015 the Court granted Waters & Kraus a disbursement for expenses ($290,324.64) incurred up to that date. *See* D.E. 694.

Exhibit A (D.E. 972-3) similarly fails to show any qualifying common benefit work. Although Waters & Kraus characterizes the numerous depositions that occurred in 2013 and 2014 as "Bellwether Trial Depositions" and "Common Issue Depositions," Exhibit A does not by itself provide any indication that the work conferred a substantial common benefit, and Waters & Kraus does not argue that it does, Response, at 27-28. The Defendant itself has stated:

9

> Zimmer and over 290 plaintiffs' firms throughout the county have established good-faith settlement values long-before or in spite of Waters Kraus' decision to actively push their cases to trial. And, those tactics have been consistently *unsuccessful*. . . . Besides trials, the universe of discovery collected in the MDL has revealed that plaintiffs' cases are weaker, not stronger, than originally believed, and that the value of the cases is less, not more. With certainty, the work done by Waters Kraus has not increased the leverage of MDL plaintiffs or the settlement value of these cases.

Defendants' Response to PLC's Appeal of Order on Motion to Reduce Common Benefit Fund Assessment, *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, 2015 WL 10985009 (D.N.J. Dec. 21, 2015); D.E. 663.  Further, there is no indication that any of this work qualified as common benefit work rather than as work that merely benefited individual clients of Waters & Kraus.[6]  Also, since these so-called "common issue" depositions listed in Exhibit A took place, in 2013 and 2014, Waters & Kraus has done no common benefit work, whereas since and during this time period Messrs. Seeger, Cecchi, and Meadows created the global Settlement Program that resolved the litigation and in which Waters & Kraus enrolled its clients after vigorously opposing it.  *See* Seeger Decl. ¶¶ 7-9 (D.E. 986).

---

[6]  Moreover, the depositions in Exhibit A all took place in 2013 and 2014.  Since that time, however, the Court has already granted a disbursement to Waters & Kraus for expenses related to such work, as noted above.  *See* D.E. 680, 680-1, 694.  To the extent Waters & Kraus seeks an award for the same expenses again, *see* D.E. 972-6 (Exhibit D); D.E. 972-1, at 7, that should be denied as duplicative.

Exhibit B in support of Waters & Kraus' Response (D.E. 972-4) is equally unpersuasive. A declaration from George G. Tankard, III, it purports to detail the total documents reviewed by Waters & Kraus. The Tankard declaration is dated January 26, 2015 and states that it was submitted in support of Waters & Kraus' motion for contribution from state-court plaintiffs to the common benefit fund. A review of the docket entries for that motion, however, reveals that this declaration was never filed as part of that motion. *See* D.E. 652. Furthermore, that motion of Waters & Kraus, seeking contribution from state court plaintiffs, was denied by the Court. D.E. 709. In addition, reliance on Exhibit B by Waters & Kraus as an example of common benefit work, *see* Response, at 27, is disingenuous because, after the Tankard Declaration was executed in January 2015, Waters & Kraus sought, and received reimbursement for, $290,324.64, for "common benefit expenses . . . to date," including that relating to "reviewing document productions." *See* D.E. 680, 680-1 (March 11, 2015 request by Waters & Kraus for disbursement); D.E. 694 (March 25, 2015 Order granting disbursement request).[7]

---

[7]   Exhibit G to the Response of Waters & Kraus contains a declaration by Gibbs Henderson (D.E. 990-8) that largely replicates the January 26, 2015 declaration of George Tankard but instead is dated, and was filed on, February 22, 2016. *See* D.E. 833-2. The Henderson declaration adds that the "[t]otal hours spent on common issue case work by Waters and Kraus attorneys and staff *as of March 2015* was 3,906.25." *Id.* ¶ 5 (emphasis added). Neither of these declarations provides the amount of time devoted to the asserted document review or for what specific purpose or case the documents were reviewed.

Waters & Kraus further points out that it "tried bellwether cases in three different jurisdictions." Response, at 27-28; D.E. 972-1, at 6-7. First, cases tried elsewhere are not "bellwethers" in this MDL. Moreover, as previously noted, during the pendency of these cases no plaintiff in the MDL was able to engage in settlement discussions with Defendants. D.E. 986 (Seeger Decl. ¶ 6; Brief at 5). Waters & Kraus' trial work in these cases also was to serve its *own individual clients*, and three of the four trials resulted in defense verdicts.[8] Further, the lone plaintiff verdict came in a California state court case. But the jury's award of damages was overturned as excessive, due to the "highly prejudicial" misconduct of Waters & Kraus, *see* D.E. 808, at 1; *Kline v. Zimmer, Inc.*, 2018 WL 1980957, at *1, 14-15 (Cal. Ct. App. Apr. 27, 2018). In any event, Waters & Kraus's work on the California case and the other two states cases is irrelevant because non-MDL state cases do not qualify for common benefit work. *See* CMO No. 3 ¶ 11 (eliminating work on state cases as common benefit work).

---

[8] *See generally In re Oral Sodium Phosphate Sol.-Based Prod. Liab. Action*, 2010 WL 5058454, at *4 (N.D. Ohio Dec. 6, 2010) (plaintiff's attorney can "undertake maleficent efforts that work to the common *detriment* of all settling plaintiffs" by, "for example, . . . repeatedly complicat[ing] and interfer[ing] with negotiations between the main parties, delaying settlement without rendering any consequent benefit") (emphasis in original); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 934 (N.D. Ohio 2003) (state court attorneys' efforts to obtain verdicts for own clients harmed settlement prospects and "'frustrate[ed]'" and "disrupt[ed] the orderly resolution of the MDL litigation'") (emphasis in original); *id.* at 909 n.1 (withholding "disbursement of common benefit fees to certain attorneys who . . . appear to be engaging in conduct that works to the common *detriment* of the plaintiff class") (emphasis in original).

Thus, Waters & Kraus shows no eligible common benefit work.  To the contrary, it worked towards the common detriment of all plaintiffs in the MDL.  As such, the reliance by Waters & Kraus on any of its work as demonstrating common benefit work that conferred a substantial benefit should be rejected.[9]

**D.   The Common Benefit Work of Messrs. Seeger and Cecchi is Not at Issue Here and, In Any Event, That Work Clearly Conferred a Substantial Benefit on the Plaintiffs**

Waters & Kraus devotes a large portion of its brief to mischaracterizing the common benefit work of Messrs. Seeger and Cecchi.  Response, at 5-6, 20, 26-30.  That issue, however, is not before the Court now; rather, only whether the Court's June 7th disbursement order was proper is at issue here.   Messrs. Seeger and Cecchi, as well as Wendy Fleishman, *see* D.E. 989, request the opportunity to fully address the entitlement of any plaintiffs' counsel to reimbursement for common benefit work, but based upon an orderly, fair, transparent, and efficient process that equitably allocates the Common Benefit Fund.  Unlike the disbursement request of Waters & Kraus, such a process would   comply with CMO No. 3 and the applicable case law.  *See* Pls. Br. at 10-16; D.E. 986 (Seeger Decl. ¶ 12); D.E. 973, 979.  There is nothing controversial about this request.

---

[9]   Waters & Kraus suggests that it can receive a common benefit award even if its work "did not benefit all MDL plaintiffs."  Response, at 28.  That is false.  *See* CMO No. 3 ¶ 10 (work must be "for joint and common benefit of plaintiffs"); *In re Diet Drugs*, 582 F.3d at 547 ("attorneys who provide class-wide services" are eligible).

Even were the work of Messrs. Seeger and Cecchi relevant here, however, the arguments attacking it are unavailing. Waters & Kraus argues that its motion for disbursement simply tracks previous disbursement requests of the PLC in 2012 that were approved. It does not. At the time the previous 2012 disbursement requests of the PLC were submitted, the funds were sought for common benefit work performed for all MDL plaintiffs, were sought to be disbursed for *all* PLC members, and further sought Court approval *in the absence of any objections. See* D.E. 111, 111-1, 143. Those requests are a far cry from the iron-fisted approach of Waters & Kraus, which has hindered, threatened, and needlessly delayed the reaching of a global settlement for all plaintiffs in this matter. *See* D.E. 898 (Waters & Kraus letter opposing settlement).[10]

In contrast, as reflected by the Declaration of Christopher A. Seeger, the brief of the Co-Liaison Counsel in support of their motion to reconsider and for a stay, and letters to the Court, *see* D.E. 973, 979, 986, Messrs. Seeger and Cecchi clearly performed common benefit work that conferred a substantial benefit on all of the plaintiffs. Messrs. Seeger, Cecchi, and Co-Settlement Counsel Richard D. Meadows engaged in substantial negotiation efforts that ultimately led to the global

---

[10] *See generally* S. Todd Brown, *Plaintiff Control and Domination in Multidistrict Mass Torts*, 61 Clev. St. L. Rev. 391, 404 (2013) (noting that "[t]he real threat [to global settlement in MDL setting] is that one or more disempowered attorneys representing several plaintiffs will . . . reject the settlement in their clients' names or persuade their clients to reject the settlement due to misinformation or promises of greater potential recoveries down the road").

settlement that was approved by the Court, despite fierce opposition by Waters & Kraus. *See* D.E. 986 (Seeger Decl. ¶¶ 4-10); D.E. 898. That work, not Waters & Kraus' five-year out-of-jurisdiction work, created the CBF.

## CONCLUSION

The Court should grant the motion for a stay and for reconsideration, and vacate its June 7 Order disbursing funds from the CBF.

Dated: July 9, 2018

Respectfully submitted,

CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, P.C.

By  /s/ James E. Cecchi
     JAMES E. CECCHI
     5 Becker Farm Road
     Roseland, New Jersey 07068
     Tel: (973) 994-1700
     Fax: (973) 994-1744

SEEGER WEISS LLP

By /s/ Christopher A. Seeger
     Christopher A. Seeger
     55 Challenger Road
     Ridgefield Park, NJ 07660
     Tel: (973) 639-9100
     Fax: (973) 639-9393

*Plaintiffs' Co-Liaison Counsel*